[No. 15439. Department Two.—September 26, 1893.]

F. J. WOODWARD, APPELLANT, v. FRUITVALE SANITARY DISTRICT ET AL., RESPONDENTS.

SANITARY DISTRICT— PETITION FOR ORGANIZATION.— A petition for the organization of a sanitary district under the act of March 31, 1891, asking the board of supervisors of the county to provide therefor, and to call an election within the district for the purpose stated in the act, giving the name and boundaries of the proposed district, and describing the petitioners as residents and freeholders thereof, sufficiently shows the desire of the petitioners to form a district under that name, and it appearing that twenty-five of the petitioners are, in fact, both residents and freeholders of the proposed district, the fact that the petition is signed by the names of others not having the statutory qualifications, does not vitiate the petition.

ID. — POSTING OF NOTICE OF ELECTION. — The statute does not in terms provide that the "four successive weeks" in which notice shall be posted "prior to the election" shall be the four successive weeks next preceding the election, and a notice posted on the fourth day of October, 1892, and remaining posted for four successive weeks from that date, is a sufficient compliance with the letter of the statute.

ID. — PREMATURE ORGANIZATION OF SANITARY BOARD— COLOR OF OFFICE— COLLATERAL ATTACK UPON BONDS OF DISTRICT — SUIT BY TAX-PAYER. — The fact that the sanitary board elected by the people of the district met and organized by the election of a president and secretary before the votes were canvassed by the supervisors, and the result declared, cannot invalidate the acts of the officers of the board under color of office, after receiving their commissions, and their acts thereafter as officers of such board in signing bonds issued by

the sanitary board cannot be inquired into in a collateral proceeding by a tax-payer to test the validity of the organization of the district and the legality of the bonds, and the validity of a tax levied by the board upon property in the district.

ID. — CONSTITUTIONALITY OF STATUTE — POLICE POWER — MUNICIPAL CORPORATIONS. — The act of March 31, 1891, permitting the organization and creation of sanitary districts, is within the "police power" of the legislative department of the state, and is not void as necessarily interfering with the exercise of municipal functions in cities and towns, and is operative to justify the organization of such districts, the boundaries of which do not embrace any city or town, or in any way interfere with the powers or government of a municipality.

ID. — CONTINGENT CONFLICT WITH CONSTITUTION — GENERAL SCOPE OF ACT. — In passing upon the constitutionality of a statute, the court is not required to imagine some possible contingency in which its provisions may conflict with the constitution, or with other statutes, but to determine whether in its general scope and the manner provided for its enforcement it is within the province of the law-making power.

APPEAL from a judgment of the Superior Court of Alameda County.

The facts are stated in the opinion.

*Freeman & Bates,* for Appellant.

Statutes authorizing the formation of municipal corporations must be strictly pursued. (*Page* v. *Board of Supervisors,* 87 Cal. 50.)   The finding by the board of supervisors that all the signers of the petition were residents and freeholders cannot preclude inquiry on the question. (*In re Madera Irrigation District,* 92 Cal. 332, 334, 336; 27 Am. St. Rep. 106; *Kahn* v. *Supervisors,* 79 Cal. 400; *Litchfield* v. *Vernon,* 41 N. Y. 123; *Thorn* v. *West Chicago P. C.,* 130 Ill. 594.)   The act under which the district was formed is unconstitutional.   (Const., sec. 6, art. XII.; secs. 12, 13, art. XI.; *People* v. *Lynch,* 51 Cal. 33; 21 Am. Rep. 677; *Yarnell* v. *Los Angeles,* 87 Cal. 603, 607.)

*District Attorney Charles E. Snook,* and *Reed & Nusbaumer,* for Respondents.

The act is clearly constitutional.   (See *In re Madera Irrigation District,* 92 Cal. 296; 27 Am. St. Rep. 106.)   All the acts of the board and its officers are valid and binding upon all parties dealing with the board and district, and none of their acts can be questioned in this proceeding, or be attacked collaterally. (*People* v. *Sassovich,* 29 Cal. 480; *People* v. *Provines,* 34 Cal. 520;

*Garrison* v. *McGowan,* 48 Cal. 592; *Delphi School District* v. *Murray,* 53 Cal. 29; *Cohas* v. *Raisin,* 3 Cal. 444; *People* v. *Roberts,* 6 Cal. 214.) It is well settled that title to an office cannot be tried in a collateral proceeding, and such title can only be tested by an action brought directly for that purpose in the name of the people. (*People* v. *Sassovich,* 29 Cal. 480; *People* v. *Provines,* 34 Cal. 520.)

SEARLS, C.—This is a controversy submitted to the court below upon an agreed statement of facts, as provided for by section 1138 of the Code of Civil Procedure. Judgment was rendered in favor of the sanitary district, and Woodward appeals.

The proceeding was initiated by F. J. Woodward, a taxpayer within the Fruitvale Sanitary District, to test the validity of the organization of such district, and the legality of certain bonds issued by the sanitary board, as well as the validity of a tax levied by said sanitary board upon property in said district.

The Fruitvale Sanitary District was organized under and pursuant to an act of the legislature of the state of California, approved March 31, 1891, entitled, "An act to provide for the formation, government, operation, and dissolution of sanitary districts in any part of the state for the construction of sewers and other sanitary purposes," etc. (Stats. 1891, p. 223.)

The first point made by appellant is that the petition for the formation of the district is defective in this: 1. That the petition "does not state distinctly the desire of the petitioners to form a district, nor what the name of the district is to be." 2. That while the petition was signed by thirty-six persons, only twenty-five of them were freeholders within the district.

The petition is addressed to the "Hon. Board of Supervisors of the County of Alameda, State of California," and provides as follows: "We, the undersigned, residents and freeholders of the hereinafter described district to be known as 'Fruitvale Sanitary District,' bounded and described as follows, to wit: (then follows a description of the bounds of the proposed district) do respectfully petition your Hon. Board that, in conformity with an act to provide for the formation, government, operation, and dissolution of sanitary districts in any part of the state, etc. . . . . You do call an election within said district for the purpose stated in said act."

The first section of the act referred to in the petition reads as follows: "Whenever twenty-five persons in any county of the state shall desire the formation of a sanitary district within the county, they may present to the board of supervisors of such county a petition signed by them, stating the name of the proposed district, and setting forth the boundaries thereof, and praying that an election be held as provided in said act. Each of the petitioners must be a resident and freeholder within the proposed district." (Stats. 1891, p. 223.)

The desire to form a sanitary district is made manifest by filing a petition as provided by the statute. Beyond this expression of the desire of the petitioners it was unnecessary to go. The statute having prescribed the manner by which the desire for a sanitary district is to be shown, no other or further evidence of such desire is required, and had the petitioners expressed affirmatively their desire in the premises, it would have added nothing as evidence to the force of their petition. They stated "the name of the proposed district" in their petition. It was according to that instrument to be known as the "Fruitvale Sanitary District." This was clearly a sufficient designation of a name for the proposed district.

The petition is signed by thirty-six names, and according to the agreed statement of facts, "each and all of the thirty-six persons who signed said petition were then residents of, but only twenty-five of them were freeholders within the boundaries of the proposed sanitary district." The law is complied with in that respect when twenty-five petitioners, as in this case, sign the petition, *each of whom is a resident and freeholder* within the proposed district. The object of the statute is to have that number of petitioners thus qualified, and the addition of others wanting in these essential qualifications does not vitiate the petition.

Within thirty days after filing the petition, and on, to wit, October 3, 1892, the board of supervisors of Alameda County in regular session acted upon the petition, and by resolution provided for an election in said sanitary district to be held on the eighth day of November, 1892, for the purpose of determining the question of the formation of a sanitary district within said county of Alameda, to be known and designated as the

"Fruitvale Sanitary District," and for the election of officers of said district, etc., setting out the boundaries of the district, defining the officers to be elected, etc., as provided by section 2 of the act hereinbefore referred to, and provided for posting and publishing a copy of the order for four weeks, as in said act provided. It is objected that this order was not posted for four successive weeks prior to the election, as by section 3 of the act provided. The evidence on this subject is: "That on the fourth day of October, 1892, a copy of the order last above mentioned was posted for four successive weeks prior to the eighth day of November, 1892 (the date fixed for the election), in three public places within the limits of the proposed sanitary district, and a copy of said order was published," etc. The language of the statute is: "A copy of such order shall be posted for four successive weeks prior to the election," etc. This language is frequently used in statutes directing the publication of notices, while in the matter of *posting* the usual direction is that it be posted at least, etc., specifying some given time before a fixed date or event. The evidence of posting is perhaps somewhat obscure, but the inference is fairly deducible that the notice was posted on the 4th of October, 1892, and remained posted for four successive weeks prior to November 8, 1892. The statute does not in terms provide that the four successive weeks of posting shall be the four successive weeks next preceding the election, and the evidence of posting being a literal compliance with the letter of the statute, is regarded as sufficient.

The election was held on the eighth day of November, 1892, at which a majority of the voters voted in favor of the formation of a sanitary district, and by a like vote a sanitary assessor and five members of the sanitary board were elected, pursuant to the call of the board of supervisors, and as provided in the statute. On the eighteenth day of November following, the board of supervisors canvassed the votes of said election, and as a result, after reciting a compliance with the statute, ordered that the sanitary district be established, defining its boundaries, and declared P. H. Blake duly elected as sanitary assessor, and P. L. Barrett, A. D. Bennett, A. C. Fay, J. H. W. Riley, and A. Schroyer, duly elected as the sanitary board of said "Fruit-

vale Sanitary District," they severally having received a majority of the votes cast for said several offices.

On the fourteenth day of November, 1892, the said officers so afterward declared elected met and organized by the election of said J. H. W. Riley as president, and said C. D. Bennett as secretary. It is objected by appellant that this organization was premature and unauthorized, and as there is no evidence that a president and secretary have since been elected, there are no duly authorized officers of the board. The statute provides that "if a majority of the votes cast at such election shall be in favor of a sanitary district, the board of supervisors shall make and cause to be entered in the minutes an order that a sanitary district of the name and with the boundaries stated in the petition (setting forth such boundaries) has been duly established, and said order shall be conclusive evidence of the fact and regularity of all prior proceedings of every kind and nature provided for by this act or by law, and of the existence and validity of the district." (Sec. 4.) The act in question does not provide in terms that the vote for officers of the district shall be canvassed by the board of supervisors. It does, however, provide that "such election shall be conducted in accordance with the general election laws of the state, so far as the same shall be applicable, except as hereinotherwise provided."

"Where a person is elected to an office his right is established by the result of the election, and does not depend upon his getting a commission, for in such a case the choice comes from the people, and when they have voted the last act required of them has been performed. In such a case the issuing of a commission is merely a ministerial act, to be performed by the proper officer, and not, as in the case of taking by appointment, a part of the act to be done." (*Conger* v. *Gilmer*, 32 Cal. 80.)

The members of the sanitary board are not required to file a bond, and they are required by the statute to elect a president and secretary at their first meeting. If it be conceded that they prematurely met and organized, it did not affect their eligibility or right to act as a board when thereafter commissioned. The contention is not that they have not been duly elected and qualified, but that they organized before the votes were canvassed by the supervisors and the result declared. Under such

circumstances the acts of the officers as such since they received their commissions, being under color of office, would be valid. Having been regularly elected and qualified as members of the sanitary board, their acts as officers of such board in signing bonds cannot be inquired into in this collateral proceeding, but only by some direct proceeding to test their right to the offices which they are in fact filling.

Is the act of March 31, 1891, permitting the organization and creation of sanitary districts, constitutional? The contention of appellant seems based upon the theory that the act attempts to authorize the invasion by the legislature and by the special boards provided for in the act of the functions of municipal corporations. That the powers conferred relate to sewers and drains, and that the only bonds provided to be issued under the act must be "for the construction of sewers," and while it is admitted that districts may be formed within a territory not embracing a municipal corporation, such as a city or town, still, as it applies to any part of the state, it must in many instances embrace such cities and towns, and the powers conferred come in conflict with those delegated to the municipal authorities thereof.

Section 6 of article XI. of the constitution inhibits the legislature from creating municipal corporations by special laws, but provides that it shall provide by general laws for the incorporation, organization, and classification in proportion to population of cities and towns. Section 12 of the same article provides that "the legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Section 13 of the article provides that "the legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or in any way interfere with, any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever." Section 11 of article XI.

provides that "any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." These provisions may be epitomized as follows:—

1. The legislature may not create corporations for municipal purposes by special laws, but may provide therefor by general laws.

2. The legislature shall not impose taxes upon such corporations or the inhabitants or property thereof for municipal purposes, but may by general law authorize such corporations to do so.

3. The legislature cannot delegate to other than the municipal corporations power to assess, collect taxes, or to control, appropriate or supervise or interfere with municipal improvement, money or effects.

4. Any county, city, town, or township may make and enforce within its limits such local, police, and sanitary laws, etc., other regulations, as do not conflict with general laws.

The argument is that the statute in question applies to the whole state, and hence will in many instances involve the formation of sanitary districts embracing cities and towns. That among the recognized municipal functions of cities and towns, the power to construct sewers and drains and to manage and control them for the purpose of improving sanitary conditions occupies a prominent place. That the subject-matter of the act is sewers and drains, and is in effect an attempt on the part of the legislature to interfere with municipal functions, and hence in violation of section 6 of article XI. of the constitution. That the power conferred by the act necessarily involves the right to assess property for municipal purposes, and hence falls within the prohibition of section 12 of article XI. And further, that the act under consideration attempts to delegate to a special commission power to levy taxes and to make, control, and supervise municipal improvements, and exercise municipal functions within cities and towns, in violation of section 13 of said article XI. *People* v. *Lynch*, 51 Cal. 33; 21 Am. Rep. 677, and *Yarnell* v. *Los Angeles*, 87 Cal. 603, are cited in support of this contention. Those cases relate to the power of the legislature to interfere by direct legislation in the municipal affairs of Sacramento and Los Angeles, respectively.

XCIX. CAL.—36

The vice of the argument on the part of appellant lies in the fact that it presupposes that the act under consideration *must* include cities and town, and *must* interfere with their municipal functions. There is no suggestion that the "Fruitvale Sanitary District" embraces within its boundaries any city or town, or that the powers to construct sewers, etc., to assess and levy taxes, in any way interferes with or affects any such municipality.

To the legislature is confided the entire power of the people to make laws not granted by the federal constitution to Congress, or inhibited by that of the state constitution. In passing upon the constitutionality of the statute we are not required to imagine some possible contingency in which its provisions may conflict with the constitution or with other statutes, but to determine whether, in its general scope and in the manner provided for its enforcement, it is within the province of the law-making power. The act of March 7, 1887, to provide for the organization and government of irrigation districts has been repeatedly held constitutional. (*Turlock Irrigation District* v. *Williams*, 76 Cal. 360; *Central Irrigation District* v. *De Lappe*, 79 Cal. 351; *In re Madera Irrigation District*, 92 Cal. 296 ; 27 Am. St. Rep. 106.) Yet we can imagine the formation of an irrigation district under that statute with its boundaries confined to the limits of an incorporated city or to those of a swamp land district where irrigation would be productive of injury and of no benefit. Should such a case arise, it may well be that it would be held that the facts showed that the case was not within the reason of the law, and hence not subject to its provisions. It would not, however, follow that the law was unconstitutional. So here it may well be that if in the formation of a sanitary district an incorporated city or town shall be included, in which the authority conferred upon the sanitary board is delegated to the municipality, it will be held that the law under consideration was not intended to apply to such city or town. The illustration is only used by way of comparison to show that the act is not unconstitutional for the reason indicated by appellant, and not to indicate an opinion upon a case which may never arise.

The statute in question is one coming clearly within the purview of the legislative power. All laws affecting the peace,

good order, morals, and health of the community come within the "police power" of the legislative department of the state. (*Ex parte Shrader*, 33 Cal. 279.)   It has been said:   "There is also the general police power of the state, by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the legislature to do which (in the absence of constitutional restriction) no question ever was, or, upon acknowledged general principles, even can be made so far as natural persons are concerned."   (Redfield, C. J., in *Thorpe* v. *Rutland etc. R. R. Co.*, 27 Vt. 140; 62 Am. Dec. 625.)   With the advance of civilization and the increase of knowledge upon the subject of hygiene, the importance of sanitary laws is coming to be better understood, and their necessity more fully appreciated.   Referable, as they are, to a conceded branch of the power vested in the law-making department of the government, few constitutional questions can arise over their exercise, except such as relate to the mode of its exercise and the extent of its application.

The well considered and elaborate case of *In re Madera Irrigation District*, 92 Cal. 296; 27 Am. St. Rep. 106, disposes of and affirms the constitutionality of nearly every question involved in this case, and a further discussion of the subject is not deemed necessary.

No point is made as to the regularity of the bonds, or as to the validity of the assessment, or levy of the tax in the sanitary district, except for the reasons hereinbefore specified.

I am of the opinion the judgment of the court below should be affirmed.

Belcher, C., and Temple, C., concurred.

For the reasons given in the foregoing opinion, the judgment of the court below is affirmed.

McFarland, J., De Haven, J., Fitzgerald, J.