[S. F. No. 5575.   In Bank.—October 3, 1910.]

In the Matter of the Petition of the SANITARY BOARD OF THE EAST FRUITVALE SANITARY DISTRICT, in the County of Alameda, State of California, Praying for a Judicial Examination, Approval, and Confirmation of the Proceedings for the Issuance of Bonds in Said District, and to Determine the Right of Said Board to Issue Said Bonds, and Their Validity.

MUNICIPAL CORPORATIONS—TWO CORPORATIONS EXERCISING SAME FUNCTIONS CANNOT EXIST IN SAME TERRITORY.—There cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction, and privileges.

ID.—ANNEXATION TO MUNICIPALITY—MERGER OF POWERS IN MUNICIPALITY.—Where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished, and its property, powers, and duties are vested in the corporation of which it has become a part. The same result follows, where a public corporation having powers more limited than those of a municipal corporation is annexed to a city which possesses all of the powers of the corporation which has been annexed to it and others in addition.

ID.—AUTHORITY OF LEGISLATURE OVER MUNICIPALITIES.—In the absence of any constitutional restriction, the legislature has absolute power over the organization, the dissolution, the extent, the powers, and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. What shall be the effect of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent.

ID.—SANITARY DISTRICT ANNEXED TO MUNICIPALITY—ISSUANCE OF BONDS.—The annexation of the territory of a sanitary district organized under the act of 1891 (Stats. 1891, p. 223), to an adjacent municipal corporation having every power conferred upon the sanitary district, operates to extinguish and dissolve the district. Upon the completion of the annexation the powers of the sanitary district and of the district sanitary board ceased, and it thereafter had no power to issue bonds that had been authorized by an election held prior to the annexation.

ID.—MUNICIPALITY CANNOT ISSUE BONDS AUTHORIZED BY DISTRICT.— After such annexation, and in the absence of statutory authorization therefor, the municipality to which the sanitary district is annexed, is not authorized to assume the validity of the bond election, and

take the further steps necessary to the issuance of the bonds and the construction of the work initiated by the district.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, F. B. Ogden, and T. W. Harris, Judges.

The facts are stated in the opinion of the court.

J. W. Stetson, Heller, Powers & Ehrman, and Sydney Schlesinger, for Appellant.

Reed, Black & Reed, J. J. Allen, T. S. Gray, and Snook & Church, for Respondent.

SLOSS, J.—This is a proceeding instituted by the sanitary board of the East Fruitvale Sanitary District, pursuant to section 18 of the act for the formation of sanitary districts (Stats. 1891, p. 223), to determine the right of the board to issue bonds and the validity of such bonds.

The East Fruitvale Sanitary District was organized in May, 1909, under the provisions of said act. The territory comprising the district is in the county of Alameda, and no part of it was, at the time the district was organized, within the boundaries of any municipal corporation. Following such organization the sanitary board initiated proceedings for the construction of a sewer system at an estimated cost of fifty-four thousand dollars, to be raised by an issue of bonds of the district. An election was duly called for and held on the tenth day of July, 1909, and at such election the requisite two thirds of the votes were, as shown by a canvass regularly had, cast in favor of the issuance of the bonds. Thereafter on the third day of December, 1909, said sanitary board passed an order that the bonds of the district be issued as prescribed in the act and as directed by the vote of the electors of the district.

All of the foregoing proceedings for the formation of the district and the steps precedent to the issuance of the bonds were regularly taken in strict compliance with the terms of the law governing sanitary districts.

On November 16, 1909, an election regularly called was held for the purpose of annexing to the city of Oakland

certain adjacent territory which included all of the territory embraced within the East Fruitvale Sanitary District.
At said election a majority of the votes cast in the said city
and a majority of the votes cast in the territory sought to
be annexed were in favor of annexation. A certified statement of the result of the election was filed with the secretary
of state on the eighth day of December, 1909.

The city of Oakland appeared in the present proceeding
and contested the right of the sanitary board to issue the
bonds. The contention of the city was and is that by the
annexation the territory comprised in the sanitary district
was merged into the municipal corporation of which it became
a part and that the power of such district to construct sewers
or to issue bonds therefor ceased. The court below held to
the contrary, its fifth conclusion of law being as follows:
"That the East Fruitvale Sanitary District was not dissolved
by reason of said annexation of the territory of said district
to the city of Oakland and that the sanitary board of the
East Fruitvale Sanitary District did not cede its powers to
the council of the city of Oakland over the territory of the
said district annexed to the city of Oakland. That the right
of the sanitary board of the East Fruitvale Sanitary District
to issue the bonds· of said district, which, as set forth in the
petition on file in the above-entitled matter, it intends to
issue, has in no way been affected by the annexation of the
territory of the district to the city of Oakland."

Accordingly, the court gave judgment declaring that said
district is a duly and legally organized sanitary district "and
that the said sanitary district possesses full power and authority to issue and sell, from time to time, the bonds of said
sanitary district to the amount of $54,000." The city of
Oakland appeals from this judgment.

Under section 5 of the act providing for the formation
of sanitary districts every such district has power to have
and to use a common seal and sue and be sued by its name,
to construct and maintain and keep clean such sewers and
drains as in the judgment of the sanitary board shall be
proper, and for this purpose to acquire by purchase, gift,
devise, condemnation, or otherwise, such property and rights
of way as may be necessary, and to pay for and hold the
same, and make contracts, deeds, etc., necessary or proper

to the exercise of any of the powers of the district, to issue bonds and to assess, levy, and collect taxes to pay the principal and interest on the same, and the cost of laying or maintaining any sewer or sewers that may be constructed subsequent to the issuance of said bonds, or any lawful claims against said district, to employ all necessary agents and assistants and pay the same, to lay its sewers and drains in any public street or road of the county, to make and enforce all necessary and proper regulations for the removal of garbage and the cleanliness of the streets and roads of the district, and for the purpose of guarding against the spread of contagious and infectious diseases and for the isolation of persons and houses affected by such diseases, and all other sanitary regulations not in conflict with the constitution and laws of the state, to impose and fix penalties or forfeitures for any violation of its regulations or orders and to fix the penalty therefor, to call, hold, and conduct all elections necessary or proper after the formation of the district, to prescribe the time and manner of assessing, levying, and collecting taxes for sanitary purposes, to compel all residents and property-owners within the district to connect their houses and habitations with the streets sewers and drains, and generally, to do and perform any and all acts necessary and proper to the complete exercise of any of its powers or the purposes for which it was formed.

The city of Oakland is governed by a freeholders' charter approved by joint resolution of the two houses of the legislature adopted February 14, 1889. (Stats. 1889, p. 513.) This charter confers upon the city so formed every power ordinarily incident to the complete organization of a municipal corporation. These powers include each and every power conferred upon sanitary districts by section 5 of the act of 1891. The annexation act under which the territory of the East Fruitvale Sanitary District was annexed to the city of Oakland (Stats. 1889, p. 358) provides that from and after the date of the filing in the office of the secretary of state of the document showing the returns of the annexation election "the annexation of such territory so proposed to be annexed shall be deemed and shall be complete, and thenceforth such annexed territory shall be to all intents and purposes a part of such municipal corporation."

It is a well-settled doctrine that "there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges." (1 Dillon on Municipal Corporations, 4th ed., sec. 184; *King* v. *Pasmore,* 3 Term R. 199, 243; *Bloomfield* v. *Glen Ridge,* 54 N. J. Eq. 276, 283, [33 Atl. 925].)

Accordingly, it is generally held that where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers, and duties are vested in the corporation of which it has become a part. (28 Cyc. 217; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514, 528; *Adams* v. *Minneapolis,* 20 Minn. (484) 438; *People* v. *Supervisors,* 94 N. Y. 263; *Stroud* v. *Stevens Point,* 37 Wis. 367; *Schriber* v. *Langlade,* 66 Wis. 616, [29 N. W. 547, 554].)

If this be true where one of two municipal corporations having co-extensive powers is annexed to another, the same result must follow *a fortiori* where a public corporation having powers more limited than those of a municipal corporation is annexed to a city which possesses all of the powers of the corporation which has been annexed to it and others in addition.

These rules do not rest upon any theory of constitutional limitation. In the absence of any constitutional restriction, the legislature has absolute power over the organization, the dissolution, the extent, the powers, and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. (*In re Madera Irrigation District,* 92 Cal. 296, [27 Am. St. Rep. 106, 28 Pac. 275, 675].) What shall be the effect of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent. The cases above cited declare the result of such action under laws which do not show affirmatively an intent to continue the existence of two separate public corporations within the same territorial limits. In the case at bar, the appellants contend that certain provisions of our state constitution prevent the formation of a sanitary district which shall exercise jurisdiction

over any part of the territory included within a municipal corporation. There have been, in our decisions, one or two intimations to this effect. (*Woodward* v. *Fruitvale San. Dist.*, 99 Cal. 562, [34 Pac. 239]; *In re Werner*, 129 Cal. 567, [62 Pac. 97].) But the expressions referred to were not, in either case, strictly necessary to the decision, and, as we think the question before us may (and, therefore, should) be decided without challenging the power of the legislature to authorize the creation of sanitary districts covering, in whole or in part, the territory of cities or towns, we shall not enter into a consideration of the constitutional point. Viewing the question purely as one of statutory construction, we are satisfied that, upon the general principle above stated, the various acts involved must be held to result in extinguishing and dissolving a sanitary district upon the annexation of its territory to an adjacent municipal corporation. This view has found clear expression in the decision of this court in *People ex rel. Cuff* v. *City of Oakland*, 123 Cal. 598, [56 Pac. 445]. That case involved the validity of proceedings for the annexation to the city of Oakland of the whole of one and part of another sanitary district. It was contended that territory included in a sanitary district could not be annexed to a city. Meeting this contention the court said: "It may be conceded at the outset that sanitary districts are public corporations, though not designated as corporations by the statute, and that all their powers, duties and privileges are such as are incident to municipal corporations formed under the Municipal Government Act, or existing under freeholders' charters, though not possessing many important powers, duties and privileges of the latter, and that the same powers could not, after annexation, be exercised by each in the same territory. But if the statute permits territory embraced in or covered by a sanitary district to be annexed to a city—a municipal corporation of a higher class and capable of exercising the same functions as well as others essential to municipal government—such statute contemplates, *ex necessitate rei*, a cession of the powers of the inferior corporations to the greater, and a consequent dissolution of the former as a result of the annexation. If the territory embraced in these sanitary districts had chosen to incorporate under the statutes as a town or city instead of becoming annexed to the city

of Oakland, it certainly could not have been necessary as a preliminary to such incorporation to disincorporate as such sanitary district, since by the incorporation they would have preserved every right and privilege they had before, and would at the same time acquire other rights and additional powers which would enable them the better to preserve and secure all the rights they had as sanitary districts; and if they might incorporate as a town or city without first dissolving the prior corporation no reason is perceived why they could not accomplish the same thing by becoming annexed to an existing municipal corporation, under the act of 1889. . . . "

Even if this declaration may be regarded as *dictum,* we are satisfied that it states the true view of the statutes involved. To hold that a sanitary district retains its existence and powers notwithstanding the annexation of its territory to the city would lead to the existence within the territory annexed of two distinct local governmental bodies claiming to exercise the same powers over the same territory. Such a condition would produce intolerable confusion, if not constant conflict. We find nothing in the statute indicating an intent to so provide. It is true that the sanitary district act contains one or two expressions which might seem to indicate that a sanitary district may cover in whole or in part territory within the boundaries of a municipal corporation. Thus section 5 in granting the power to enter upon a street or road for the purpose of making excavations, declares that in "case such street or road shall be in an incorporated city or town the consent of the lawful authorities thereof shall first be obtained." Section 21 provides that upon dissolution of the district its property shall vest "in any incorporated city or town that may at said time be in occupation of a considerable portion of the territory of the district." It may be readily conceived that the legislature had in mind the possibility that a region, including territory both incorporated and unincorporated, might be so situated as to require a single and comprehensive scheme of sewer construction, or that, in laying a sewer for a sanitary district outside of any city or town, it might be necessary to pass through the streets of some municipality in order to reach an outlet. The provisions referring to "incorporated cities or towns" may have been

intended to apply in such cases, and, so read, they may be given full effect without holding that the act contemplated the formation or the continued existence of a sanitary district entirely within the boundaries of a municipal corporation. Be that as it may, there is certainly nothing in the act for the creation of sanitary districts which indicates any intention to repeal or modify the law providing for the annexation of territory to incorporated cities. Where such territory is annexed the law provides, as is above stated, "that such annexed territory shall be to all intents and purposes a part of such municipal incorporation." The annexed territory would certainly not be to all intents and purposes a part of the municipality if it still remained subject in matters covered by section 5 of the sanitary district act to the control of the sanitary board.

It must accordingly be held that upon the completion of the annexation the powers of the sanitary district and of the district sanitary board ceased. We are not here confronted with the question of the validity of bonds already issued before annexation, nor with the manner in which the courts would protect the undoubted rights of creditors whose claims accrued before annexation. Upon December 8, 1909, when the document showing the vote on the question of annexation was filed in the office of the secretary of state no bonds had been issued and no indebtedness had been incurred. With that annexation the power of the sanitary district to issue such bonds, or to do any other of the things specified in section 5 of the act, ceased.

The appellant city suggests that, while the sanitary district and its sanitary board were, by virtue of the annexation, shorn of power to proceed further, the validity of the bond election should be upheld, and the further steps necessary to their issuance and the construction of the sewer should be carried out by the officers of the city of Oakland. No statute or other authority for this conclusion is cited, and we think the view is manifestly untenable. It is, indeed, destructive of the appellant's main contention that the district is dissolved, for, if the contemplated work is to be done and paid for as suggested, the sanitary district would in reality be continuing its existence and operations, and the only effect of the annexation would be the transfer of the duties of the

sanitary board to a municipal board. In the absence of express statutory authority for such continuance and transfer, there is no escape from the conclusion that the bond proceedings already had fall, and that any future steps for the construction of sewers in the territory must be initiated and conducted by the proper authorities of the city of Oakland, of which such territory is a part.

If it shall be desirable to create a separate district which shall, apart from the rest of the city, bear the expense of constructing the necessary sewer, the means of so doing the work are fully provided by "An act to provide separate sewer districts within municipalities," approved April 21, 1909 (Stats. 1909, p. 1011).

The judgment is reversed with directions to the trial court to enter a judgment declaring that the East Fruitvale Sanitary District has been dissolved by the annexation proceedings and that it has not nor has its sanitary board any power to issue the bonds in question.

Angellotti, J., Shaw, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.