[Civ. No. 4918.   Second Appellate District, Division Two.—March 6, 1925.]

BERTHA KLUMPF MATOT et al., Minors, etc., et al., Petitioners, v. INGLEWOOD SCHOOL DISTRICT, etc., et al., Respondents.

[1] SCHOOL LAW—SCHOOL DISTRICTS IN CITIES OF THE SIXTH CLASS—ANNEXATION OF TERRITORY.—Under section 1576 of the Political Code, as amended in 1917, to provide "that in no instance shall the territory within an incorporated city of the sixth class be in more than one school district," where the boundaries of a city of the sixth class are extended by annexation, the boundaries of the school district embracing said city are similarly extended, even though such annexed territory was theretofore lying within the limits of a different school district.

(1) 35 Cyc., p. 857, n. 29 New.

PROCEEDING in Mandamus to compel respondent school trustees to permit petitioner school children to attend school in the district in which they reside.   Peremptory writ issued.

The facts are stated in the opinion of the court.

Kenneth E. Matot, *in pro. per.,* Marshall Stimson, Noel C. Edwards, W. C. Hintze and Allen, Allen & Eagan for Petitioners.

Edward T. Bishop, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondents.

CRAIG, J.—The city of Inglewood is a municipal corporation of the sixth class, within the county of Los Angeles, and prior to August 22, 1924, its boundaries were admittedly coterminous with those of the Inglewood School District. On that date certain territory lying within the limits of Jefferson School District, and embracing the residence property of petitioners, was annexed to the city of Inglewood.   After said annexation the above-named minors enrolled as pupils

1.   See 23 Cal. Jur. 39.

of Inglewood School District, but respondents rejected them therefrom on the ground that they were pupils of the Jefferson District° and not entitled to attend the Inglewood School. An alternative writ of mandate issued herein, based upon a petition alleging the foregoing facts and a stipulation of the parties that the annexed territory is still a part of the Jefferson School District unless such annexation had the effect of removing the same therefrom and adding it to Inglewood School District.

[1] Petitioners contend that by virtue of said annexation to the city of Inglewood, the respondent School District was similarly extended, and therefore that they no longer reside in the Jefferson District, and they invoke the provisions of section 1576 of the Political Code as authority for their alleged right to attend school in the respondent district. The part of said section here involved reads as follows: "Every city or incorporated town, except cities and towns of the sixth class, unless subdivided by the legislative authority thereof, shall constitute a separate school district which shall be governed by the board of education or board of school trustees of such city or incorporated town; *provided, however, that in no instance shall the territory within an incorporated city of the sixth class be in more than one school district.*"

The italicized proviso was added to said section in 1917 (Stats. 1917, p. 208), prior to which amendment the section did not apply to cities of the sixth class, but every other city or incorporated town constituted a separate school district unless subdivided by its legislative authority. Following the addition of the prohibitory clause, said section not only excepted cities of the sixth class from permissive legislative subdivision for school purposes, but expressly forbade that territory embraced in a city of the sixth class should be in two or more school districts. And said act of 1917 contains a further significant provision, "that whenever a city or town shall be incorporated, except a city or town of the sixth class, the board of supervisors of the county may annex thereto, for school purposes only, the remainder, or any part of the remainder, of the district or districts from which such city or incorporated town was organized, whenever a ma-

jority of the heads of families residing therein shall petition for such annexation."

If, therefore, respondents are correct in their theory that the annexed territory is not now in the Inglewood School District, it must follow that under the provisions of the statute as amended, it is no longer in any school district, since if embraced in the Jefferson District, the city of Inglewood, since the annexation, lies within two districts, and this cannot be, under the prohibition of the provision above quoted. If we read the whole statute, of which the quotation from section 1576 of the Political Code is a part, it appears to have been intended that neither municipal nor county legislative authority may extend the limits of a city of the sixth class without extending the boundaries of the single school district which must be coextensive with it. A further consideration opposed to respondents' contention is that if an original school district be not enlarged to embody added territory, annexation to a city of the sixth class would be impossible, though expressly authorized by statute.

Petitioners rely upon *Mitchell* v. *Henry,* 184 Cal. 266, 269 [193 Pac. 502], wherein the question here presented was not decided, but the supreme court said it would be reasonable to conclude that the prohibition against more than one school district in a city of the sixth class is limited to the matter of forming school districts, and does not extend to a forbidding of the creation or extension of a city when such creation or extension will happen to have the purely incidental effect of causing the territory of the city to be divided between two school districts. It was therefore further said, however: "In the second place, a not unreasonable construction of the code section is, that by it the annexed territory is upon annexation *ipso facto* taken out from the school district of which it was before a part and made part of the district of which the city is either the whole or a part. This, in fact, would seem to be the probable effect in the case of the annexation of territory to a city other than one of the sixth class. Such cities have each as a part of its municipal organization a school department. Even in the absence of any express statute on the matter, it would seem likely on the principle declared in Petition of East Fruitvale Sanitary District, 158 Cal. 453 [111 Pac.

368], that it would not be permitted that the municipal school organization and an entirely distinct school organization should both function within the same municipality at the same time, and that the annexed territory by virtue of the mere fact of its annexation would pass under the jurisdiction of the municipal school department. It would seem probable that this would also follow from the language of the code section under consideration that 'Every city . . . except cities and towns of the sixth class . . . shall constitute a separate school district.'

"It may be said that the reason for the distinction which the portion of the section just quoted makes between cities of the sixth class and others is that the former do not have school departments as parts of their organizations, and that for this reason likewise the rule of the Sanitary District case mentioned would not apply to such cities. This is true, but it might well be replied that the prohibition of the section on a city of the sixth class being in more than one school district means that nevertheless the same rule shall apply as to it, so that when the territory is annexed to it, it follows as an incident that the territory becomes a part of the same school district as the city."

From the provisions of the law quoted, and others to which it is not necessary here to make reference, it is apparent that the legislature intended to provide a system by which school districts should be made coterminous with the boundaries of other municipal entities. To be sure, the board of supervisors is given authority in certain classes of cities to provide otherwise, but this exception only emphasizes the general rule. There is sound reason for such a policy. The further consideration, of procedure for annexation, and for taxation, present themselves, whereby the qualified electors of a municipality, and of the proposed addition, declare by ballot whether or not they shall unite in a common interest and assume common burdens for the maintenance of a larger municipality. After annexation electors residing in the new territory become residents of the city, subject to taxation of their property for street, school, sanitation, and general funds (Laws 1917, p. 1664, c. 796, sec. 1, subd. 9); *Frankish* v. *Goodrich*, 157 Cal. 613 [108 Pac. 685]). Should the petitioners be required to attend school in the Jefferson District, they would be

debarred from the privilege of educational facilities which they are by statute required to join in financially maintaining, because residing within the Inglewood District and municipality, subject to taxes for such purposes, while the latter district would reject them, and the Jefferson District would be obligated to receive and educate pupils from an outside district who are no longer under obligation to contribute toward its support through taxation.

Respondents set up various contingencies which might arise to confront persons of school age remaining in outlying territory should it be held that the annexation had the effect of transferring to Inglewood School District pupils residing within the area annexed. For instance, it is said, suppose such action had left the Jefferson District without a schoolhouse, or that the supervisors should fail to provide facilities for those whom the annexation did not transfer. But, as was said in *People* v. *Rinner*, 52 Cal. App. 757 [100 Pac. 1066], the outlying territory would be subject to the authority of the board of supervisors, and we must assume that they would take the proper action. The consensus of all the authorities in this and other jurisdictions supports the policy of affording to those residing within the limits of a city or a county, and paying for the establishment and maintenance of its public institutions, the benefits of those advantages in preference to persons from outside who are under no civic obligations to such political subdivision.

The case of *Frankish* v. *Goodrich, supra,* is authoritative as to the issue presented in the instant proceeding. A comparison of the statutory provision in force at the time that case was decided with the law as it is now shows that no change has been made which would affect the issue here involved. In the statutes of 1911 we find the words, "except cities and towns of the sixth class," inserted where they now are, and in 1917 the clause that "in no instance shall the territory within an incorporated city of the sixth class be in more than one district." In that case it appeared that the city of Upland, a municipality of the sixth class, was incorporated in 1906, and its boundaries included certain territory formerly embraced within the school district of the city of Ontario, which was also a city of the sixth class. The Ontario district having previously estab-

71 Cal. App.—36

lished a high school and constituted itself a high school district which included all of the territory embraced within the Ontario school district, the school authorities of the two cities because of the absorption of a portion of this latter district within the boundaries of the new city of Upland, sought to maintain said high school as the Ontario-Upland high school district. A resident taxpayer of Ontario high school district petitioned the superior court of San Bernardino County for an order restraining the trustees of the two school districts from acting as a union high school board, and from exercising authority or control over the property or funds of the Ontario high school district. The supreme court there said:

"It is unquestioned that the outside territory formerly belonging to the Ontario school district, upon its conclusion within the boundaries of the city of Upland, became a part of the Upland school district. Pol. Code, sec. 1576; *Hughes* v. *Ewing,* 93 Cal. 414 [28 Pac. 1067]; *Bay View School Dist.* v. *Linscott,* 99 Cal. 26 [33 Pac. 781]; *Kramm* v. *Bogue,* 127 Cal. 122 [59 Pac. 394]. But while it is admitted that the outside territory formerly belonging to the Ontario school district ceased to be a part of that school district by its inclusion within the boundaries of the Upland school district and became a part of the Upland school district, nevertheless it is insisted that this territory is not severed from the Ontario high school district, as distinguished from the Ontario school district; that it still remains a part of the Ontario high school district, subject to its burdens and entitled to its rights; and that by virtue of this, through some method not defined in appellants' brief, it is declared that 'by operation of law there was thus created the Union high school district composed of Upland school district and Ontario school district.'

"But a reading of section 1670 of the Political Code and of the other sections bearing upon the question makes it manifest that a high school district, so far as its territorial limits are concerned, is not a distinct entity from the school district. . . .

"The contention that the portion of the Ontario school district now belonging to the Upland school district is still subject to taxation for the support of the Ontario high school district, and that therefore it must continue to be

a part of the Ontario high school district, is without foundation in law.   The territory is no longer subject to taxation in the Ontario high school district, but in the Upland school district alone."

It is thus definitely asserted that where under the law then existing territory outside of a city of the sixth class is annexed thereto, it becomes a part of the school district comprised by the city to which the territory is annexed. It is true that in the case under consideration a high school district was involved, as distinguished from the school district in the instant proceeding, but as the opinion above quoted holds, so far as territorial limits are concerned, the high school district and the school district are not distinguishable.   With the authority of this decision before us it remains only to be adjudged as to whether or not the clause excepting cities of the sixth class and the additional prohibitory clause have made a change in the law which would have altered the decision in the former case.

At that time the statute read: "Every city or incorporated town, unless subdivided by the legislative authority thereof, shall constitute a separate school district which shall be governed by the board of education or board of school trustees of such city or incorporated town."

The apparent idea of the legislature in subsequently inserting the provision, "except cities and towns of the sixth class," was to treat such cities as unincorporated territory for the purposes in question.   This is indicated by other provisions of the school law and the absence of legislation relating to such municipalities.

As the law read when thus changed, territory within a city of the sixth class could be annexed to that of another school district, and also it could be divided so that a portion of its area might be placed in one school district and a portion in another.   But the undesirability of permitting a city even of the sixth class to be divided is apparent.   It may have been emphasized by the cases of *Scott* v. *San Mateo County,* 27 Cal. App. 708 [151 Pac. 53], and *Petition of East Fruitvale Sanitary Dist.,* 158 Cal. 453 [111 Pac. 368]. At any rate, in 1917, the legislature added the provision that in no instance should the territory within an incorporated city of the sixth class be in more than one school district. If, under the law as it stood at the time of the decision in

*Frankish* v. *Goodrich* it was held that the provision that every city or incorporated town should constitute a separate school district, etc., resulted in the conclusion that where territory was added to a city it *ipso facto* became a part of the district comprised by the city, the conclusion is irresistible that a prohibition against territory within an incorporated city of the sixth class being in more than one school district must produce the same result. The purport of the former provision was to prevent territory within an incorporated city from being in more than one school district. It is true that in addition to this it carried an inhibition against the territory of an incorporated city being in a school district outside of the city itself, but that is immaterial here.

I am of opinion that the annexation brings petitioners within the Inglewood School District, from which it follows that they are entitled to attend school in the district in which they reside.

Let the peremptory writ of mandate issue as prayed.

FINLAYSON, P. J., and WORKS, J., Concurring.—We concur in the judgment on the ground that the question presented is concluded by the provisions of section 1576 of the Political Code as amended in 1917.

Respondents' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1925.