[Civ. No. 40454. First Dist., Div. Two. Jan. 16, 1978.]

SOUTH SANTA CLARA VALLEY WATER CONSERVATION
DISTRICT, Plaintiff and Appellant, v.
SANTA CLARA VALLEY WATER DISTRICT,
Defendant and Respondent.

854

**COUNSEL**

Richard R. Sutherland and Sydney S. Johnson for Plaintiff and Appellant.

Rhodes, McKeehan & Bernard, James W. McKeehan and Albert T. Henley for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—Plaintiff, South Santa Clara Valley Water Conservation District (hereafter South District), appeals from a summary judgment in

favor of defendant, Santa Clara Valley Water District (hereafter District).

The relevant facts are undisputed: Plaintiff South District was created in 1938 under the grant of authority of a general act, the Water Conservation Act of 1931. (Stats. 1931, ch. 1020, p. 2045.) Plaintiff's territory and all of its works are located in the southern part of Santa Clara County. Two other water conservation districts, located in other areas of Santa Clara County, were also formed under the Water Conservation Act of 1931.

Defendant District was created in 1951 under the Santa Clara County Flood Control and Water Conservation District Act (Stats. 1951, ch. 1405, p. 3337), a special act. Initially, the act provided that defendant District should consist of all the territory of Santa Clara County except for the territory within the boundaries of the three existing water conservation districts. (Stats. 1951, ch. 1405, § 2, p. 3337.) However, in 1952, the act was amended to eliminate this exclusion and to provide that defendant District should consist of all the territory of Santa Clara County. (Stats. 1953, First Ex. Sess. 1952, ch. 20, § 1, p. 372.) The 1952 amendment also added the following language to protect the three districts formed under the Water Conservation Act of 1931: "Nothing in this act shall authorize [defendant District] to condemn any of the properties, structures or works, now owned or hereafter to be constructed or acquired, by any water conservation district within the County of Santa Clara." (Stats. 1953, First Ex. Sess. 1952, ch. 20, § 3, p. 373.)

Of the three districts which had been formed under the Water Conservation Act of 1931, two of them, the Central Santa Clara Valley Water Conservation District and the Santa Clara Valley Water Conservation District, subsequently merged with one another. Plaintiff South District continued its independent existence.

In 1967, the Santa Clara County Flood Control and Water Conservation District Act was amended to provide that any water conservation district which had been formed and operated pursuant to the Water Conservation Act of 1931 and which lay wholly within the boundaries of Santa Clara County would be consolidated with defendant District unless the majority of the registered voters of any such water conservation district voted against consolidation. (Stats. 1967, ch. 205, § 29, p. 1330.) In the event of consolidation, all assets and employees of the

smaller water districts were to pass to defendant District. (Stats. 1967, ch. 205, §§ 31, 32, p. 1333.)

The two water conservation districts which had already merged with one another chose to consolidate with defendant District. Plaintiff South District held an election in 1968, and the voters rejected consolidation with defendant District.

In October 1975, the board of directors of defendant District adopted an ordinance which provided, in pertinent part, that no person within Santa Clara County should construct or seal a well without first obtaining a permit from defendant District.

On December 5, 1975, plaintiff South District commenced the instant action, seeking to obtain declaratory and injunctive relief against defendant District. Plaintiff alleged that, although it was an independent and autonomous water conservation district and totally beyond the jurisdiction of defendant District, by means of the October 1975 ordinance defendant had attempted to assume control over the water wells within plaintiff's territory. Plaintiff alleged that an actual dispute had arisen between the parties regarding their respective powers and jurisdiction. Plaintiff sought a judicial declaration that defendant's ordinance was invalid as an unlawful interference with plaintiff's power and authority within its own territory. Plaintiff also sought an injunction preventing defendant or its agents from exercising any authority within plaintiff's jurisdiction.

Both parties moved for summary judgment. The trial court granted summary judgment in favor of defendant. We have concluded that the trial court erred and accordingly reverse the judgment.

Plaintiff raises two arguments on appeal: (1) legislation which grants defendant District the power to exercise any authority in plaintiff's territory is invalid under article IV, section 16, of the California Constitution; and (2) pursuant to the statutory and decisional law of this state, defendant District is precluded from exercising authority in plaintiff's territory without first obtaining plaintiff's consent.

In support of its first argument, plaintiff points out that article IV, section 16, of the California Constitution provides, in pertinent part, that "A local or special statute is invalid in any case if a general statute can be

made applicable." Plaintiff further points out that it was formed in 1938 under a general act and defendant in 1951 under a special act; that the powers and duties of plaintiff and defendant are identical or substantially identical in many respects; and that at the time of its creation, defendant was specifically excluded from the territory within plaintiff's boundaries. According to plaintiff, it follows that, "Since the general statute district [plaintiff] is fulfilling many of the purposes for which [defendant] was created, [defendant] is without authority to operate in [plaintiff's] territory since the legislation enabling it to do so is invalid."

Plaintiff has failed to furnish any citation of authority in support of its position. On the other hand, defendant cites *American Riv. Flood Control Dist.* v. *Sweet* (1932) 214 Cal. 778, 782-783 [7 P.2d 1030], for the proposition that it has long been established in this state that districts such as plaintiff and defendant may be created by special law. In that case, it was contended that the creation of a flood control district by a special act of the Legislature was violative of article IV, section 25, subdivision 33, (now art. IV, § 16) of the California Constitution, because the district in question could and should have been formed pursuant to certain existing general statutes. In rejecting this argument, the California Supreme Court held that special legislation could coexist with a general law on the subject and that such special legislation would be deemed a valid exercise of legislative power until it was demonstrated that a general law could be made applicable. The court pointed out that the general laws which were applicable in that case were permissive only and depended upon the voluntary petition of the landowners in the district. Since it was possible that the landowners in the district might never file or might indefinitely delay the filing of any such petition, the Legislature therefore had ample justification for enacting special legislation creating the district deemed necessary. The court went on to state, "In addition it may be noted that since the early days of California down to the most recent decisions of this court, it has been held consistently, and without any departure, that districts formed for reclamation purposes, districts formed for protection from flood waters, levee districts, drainage districts and the like may be created by special law. The petitioner's brief refers to some thirty-six of said special acts, beginning with Levee District No. 1, Sutter County (Stats. 1867-1868, p. 316), and concluding with Orange County Flood Control District (Stats. 1927, p. 1325). The present act was modeled after the act creating the Los Angeles County Flood Control District (Stats. 1915, p. 1502), which was declared valid in *Los Angeles County Flood Control District* v. *Hamilton,*

177 Cal. 119 [169 Pac. 1028]. In the last case cited the opinion does not pass specially on the question of whether the act was obnoxious to the constitutional provisions relied upon by the respondents, but the point was made in the briefs and was dismissed without discussion doubtless because the court considered it wholly lacking in merit in view of the twenty-four or more cases decided by this court, cited in the briefs, where special legislation such as the act here in question was upheld. No further discussion is necessary." (Pp. 782-783.)

In this case, plaintiff contends that defendant district could have been formed under the same general law pursuant to which plaintiff was formed, namely, the Water Conservation Act of 1931. However, like the general laws under consideration in the *American River* case, that act was permissive only and required a vote by the qualified electors of the proposed water conservation district. (Stats. 1931, ch. 1020, § 1, p. 2045.) When the Legislature created defendant District by special legislation in 1951, defendant's territory included only that portion of Santa Clara County which was not included within the boundaries of the three existing water conservation districts formed under the Water Conservation Act of 1931. Obviously, the Legislature was justified in concluding that defendant's creation by special legislation was necessary since the territory originally included within defendant had never been, and was likely never to be, the subject of proceedings voluntarily initiated under the Water Conservation Act of 1931. Applying the reasoning of the *American River* case, it follows that defendant's creation by special legislation was not violative of article IV, section 16, of the California Constitution.

Also, it appears that there is no basis for claiming that the 1952 act of the Legislature, which extended defendant's boundaries to encompass plaintiff, is constitutionally invalid. In *Mulcahy* v. *Baldwin* (1932) 216 Cal. 517, 525 [15 P.2d 738], the court stated, with regard to an irrigation district, "It may be said generally that as between it and the state the district has no rights or powers which the legislature may not modify or abrogate at pleasure."

In *Barber* v. *Galloway* (1924) 195 Cal. 1 [231 P. 34], the California Supreme Court upheld the validity of legislation which provided that an irrigation district would take over a mutual water system and the functions and properties of a levee district and a drainage district. The court pointed out that the Legislature has plenary power over districts

organized for reclamation purposes; it may divide, change or modify them at pleasure. (P. 7.)

The court recognized the power of the Legislature to authorize the formation of public corporations other than counties, cities or towns in *In re Madera Irrigation District* (1891) 92 Cal. 296, 319-320 [28 P. 272]: "Inasmuch as there is no restriction upon the power of the legislature to authorize the formation of such corporations for any public purpose whatever, and as when organized they are but mere agencies of the state in local government, without any powers except such as the legislature may confer upon them, and are at all times subject to a revocation of such power, it was evidently the purpose of the framers of the constitution to leave in the hands of the legislature full discretion in reference to their organization."

In this instance, it appears that the Legislature extended defendant's boundaries because it recognized the need for a county-wide agency which would fulfill certain functions in a uniform manner throughout that entire jurisdiction. It is clear that under existing authority the Legislature possessed the power to do what it did; hence we find no merit to plaintiff's claim of constitutional invalidity.

■ We turn next to plaintiff's contention that, under the law of this state, defendant was precluded from exercising authority within plaintiff's territory without first obtaining plaintiff's consent. Plaintiff bases this argument upon section 30065 of the Water Code and certain decisions interpreting and applying that statute. Section 30065 provides, in pertinent part, that "No public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a county water district existing under the provisions of this code without the consent of such county water district." Plaintiff contends that this section applies to water conservation districts such as itself, as well as to county water districts, because section 76020 of the Water Code provides that a water conservation district "may be consolidated in the same manner as is provided for the consolidation of county water districts . . . ." Defendant opposes the position taken by plaintiff and denies that section 30065 has any application to water conservation districts.

We believe that defendant's position relative to the inapplicability of section 30065 is sound. Although section 76020 provides that water

conservation districts may be consolidated in the same manner as county water districts, section 30065 is not a statute dealing with "consolidation." The "consolidation" of county water districts was dealt with in sections 32650 through 32732 of the Water Code[1] and involved a voluntary proceeding calling for an election by the voters of the water districts.[2]

No "consolidation" of plaintiff and defendant has ever taken place. Plaintiff has, at all times, maintained its own independent existence. The 1952 amendment, which extended defendant's boundaries to encompass plaintiff, specifically provided that defendant should not be authorized to condemn any of plaintiff's properties, structures or works, whether presently owned by plaintiff or thereafter constructed or acquired by plaintiff. Thus, the Legislature expressly provided for plaintiff's continuing existence and its right to own and acquire property in the future. Further, the 1967 amendment, which provided for consolidation with defendant only in the event that the voters of plaintiff district failed to vote against consolidation constitutes another clear acknowledgment by the Legislature that consolidation had *not* previously occurred and would not occur in the future if the voters within plaintiff's territory were opposed to such a step. Since an election was held thereafter and consolidation with defendant was rejected by the majority of the voters in plaintiff's territory, defendant is in no position to contend that plaintiff has ever lost its own independent existence. As pointed out in *Petition East Fruitvale Sanitary Dist.* (1910) 158 Cal. 453, 457 [111 P. 368], "What shall be the effect of the enlargement or diminution of the

---

[1]Sections 32650 through 32732 of the Water Code were repealed by Statutes 1965, chapter 2043, section 384. See generally section 56000 et seq. of the Government Code.

[2]Even if section 30065 were applicable to water conservation districts, plaintiff is relying upon the wrong language in that statute. Section 30065 was enacted in 1957, several years after defendant was created and after its boundaries were extended to include plaintiff. Thus, the language that no public corporation or agency "shall be formed" partly or entirely within a county water district without its consent has no application to corporations or agencies formed prior to the effective date of the statute. In fact, the statute contains the following language applicable to county water districts formed prior to the effective date of the statute: "All county water districts heretofore formed partly or entirely within another county water district previously existing under the provisions of this code, with *or without* the consent of such previously existing county water district and for a purpose not then actually exercised, or to provide a service not then provided by said previously existing county water district, are hereby declared to be valid and legally existing districts." (Italics added.) Thus, if section 30065 were applicable to water conservation districts such as plaintiff and defendant, defendant district could validly and legally assert its authority within plaintiff's territory in order to accomplish a *purpose not actually exercised by plaintiff and in order to provide a service which was* not being provided by plaintiff.

boundaries of [public corporations], or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent." In this instance, the legislative intent that plaintiff continue its independent existence has been clearly expressed.

■ This analysis of the arguments of the parties serves to bring into focus the one genuine point of controversy which caused plaintiff to bring this action: as between two independent districts whose territories overlap, which district's authority is superior to the other's? Limited more specifically to the allegations of plaintiff's complaint, the question presented for decision is whether defendant possesses the power and authority to require that plaintiff obtain a permit from defendant before constructing or sealing a well within plaintiff's territory.

Research discloses no case precisely in point; however, the Attorney General has rendered a well reasoned opinion concerning the rights of a county water district and a community services district where each embraced partially overlapping territory and possessed both the authority to furnish fire protection services and the right to tax for such protection. In reaching his conclusion that the county lacked the authority to determine which district should provide the service, the Attorney General stated: "No authority has been found holding that a district or municipal corporation may be 'partially' dissolved or merged as to some of its powers and not as to others by the inclusion of all or part of its territory within the boundaries of another municipal corporation having less than all of the powers possessed by the first. In the situation under discussion it has been pointed out that each district enjoys some powers not held by the other. Neither can be said to be of a greater or higher class. It would seem to follow that if the partial inclusion of a district within a city having all of the powers of the district, and more, does not operate to dissolve the district in the overlapping area, *a fortiori* the overlapping of one district by another each having different powers as well as some in common will not affect the continued existence of each. . . .

"It is to be expected that where one governmental agency is adequately providing a particular service within an area under the jurisdiction of two districts having common powers over the subject, the agency first in time and functioning in the area would continue to provide the service without duplication by the other. The problem is one

to be solved by the governing bodies of the two agencies in a manner which will work to the best advantage of the inhabitants and with the least tax burden." (36 Ops.Cal.Atty.Gen. 297, 299-300 (1960).)

Here, the parties agree that they each possess different powers as well as some in common. Both possess the power to conserve and store water, to appropriate and acquire water and water rights, and to build, construct, acquire and repair works necessary for the storage and distribution of water. Thus, both districts have a valid basis for claiming the right to control the construction and sealing of wells within their mutual territory. Apparently, they have been unable to agree amicably between themselves which district should have control over plaintiff's wells in order to furnish the best advantage to the inhabitants; thus, it became necessary for plaintiff to bring this action for declaratory and injunctive relief. Plaintiff is the agency first in time and functioning in the area. The Legislature has specifically provided that defendant may not condemn any of plaintiff's structures or works, including those "hereafter" to be constructed or acquired. This provision clearly suggests that plaintiff should continue to have the authority to construct new wells within its own territory without interference by defendant. Finally, insofar as the welfare of the inhabitants of plaintiff's district is concerned, those inhabitants have voted against consolidation with defendant.

The judgment in favor of defendant is reversed. The matter is remanded to the trial court, with directions to grant plaintiff (1) a judicial declaration that defendant may not preclude plaintiff from constructing or sealing a well within its own territory, and (2) an injunction prohibiting defendant from attempting to do so.

Taylor, P. J., and Kane, J., concurred.

Petitions for a rehearing were denied February 15, 1978, and the petitions of both parties for a hearing by the Supreme Court were denied March 16, 1978.