[Crim. No. 660.  In Bank.—August 24, 1900.]

In re H. C. WERNER on Habeas Corpus.

129  567'
134   74
129  567
135  653

Sanitary Districts — Amendatory Statute — Constitutional Law —
Title of Act — Police Power — Void Liquor Ordinance.—The
amendment of 1895 (Stats. 1895, p. 8) to the act of 1891 (Stats.
1891, p. 223), entitled "An act to provide for the formation,
government, operation, and dissolution of sanitary districts in
any part of the state, for the construction of sewers, and other
sanitary purposes," by which sanitary boards were given ad-
ditional power "to determine the qualification of persons au-
thorized to sell liquors at retail," and by which licenses to keep
or sell liquors at retail were not allowed to take effect within
the district without the approval of the sanitary board, is
unconstitutional and void, as not being embraced within the
title of the original act, and as not being within article XI of
the constitution granting local police power to counties, cities,
towns, and townships; and a liquor ordinance of a sanitary dis-
trict based upon such amendment is without authority of law
and void.

Id.—Public Corporations not Municipal—Power of Legislature—
Construction of Constitution—Maxim.—Sanitary districts, like
irrigation and reclamation districts, are public corporations, not
municipal; and the legislature has no power to graft upon them
a subject foreign to the purposes of the act creating them,
and which falls within the police power possessed by munici-
palities organized for governmental purposes.  Under the maxim
of construction, *Expressio unius est exclusio alterius*, the legisla-
ture cannot clothe a public corporation not municipal with the
local governmental powers conferred by the constitution upon
counties, cities, towns, and townships.

Id.—Penal Legislation by Sanitary District—Query.—It seems that
the legislature cannot delegate to a sanitary district the power
of enacting penal legislation of any kind.  [Per McFarland, J.]

HABEAS CORPUS in the Supreme Court to the sheriff of
Los Angeles County, to test the validity of a commitment for
violation of an ordinance of the North Pasadena Sanitary Dis-
trict, under a judgment rendered by H. H. Klumroth, Justice
of the Peace of Pasadena Township.  Judgment affirmed upon
appeal.  B. N. Smith, Judge.

The facts are stated in the opinion of the court.

Frank F. Davis, for Petitioner.

C. C. Wright, for Respondent.

VAN DYKE, J.—The petitioner, Werner, was convicted in the justice's court of Pasadena township and sentenced to pay a fine of fifteen dollars, or, in default of such payment, be confined in the county jail of Los Angeles county for the period of fifteen days. On appeal to the superior court of Los Angeles county the judgment of the justice's court was affirmed. The relator, failing to pay his fine, was committed to the county jail. The conviction was had under a resolution of the board of North Pasadena sanitary district, which reads as follows: "Any person who shall within North Pasadena sanitary district keep a saloon or sell liquors at retail, without first having his license approved by the sanitary board of said district, shall be guilty of a misdemeanor, and shall upon conviction thereof be punished by imprisonment in the county jail not exceeding one month, or by a fine not exceeding one hundred dollars, or by both." The validity of this ordinance is the question to be considered. The act for the formation of sanitary districts was passed March 31, 1891 (Stats. 1891, p. 223), the title of which reads as follows: "An act to provide for the formation, government, operation and dissolution of sanitary districts in any part of the state, for the construction of sewers and other sanitary purposes; the acquisition of property thereby; the calling and conducting of elections in such districts; the assessment, levy, collection, custody, and disbursement of taxes therein; the issuance and disposal of the bonds thereof and the determination of their validity, and making provision for the payment of such bonds and the disposal of their proceeds." The powers and duties conferred upon the board of a sanitary district are as follows:

"Sec. 5. Every sanitary district formed under the provisions of this act shall have power to have and use a common seal, alterable at the pleasure of the sanitary board; to sue and be sued by its name; to construct and maintain and keep clean such sewers and drains as in the judgment of the sanitary board shall be necessary or proper, and for this purpose to acquire, by purchase, gift, devise, condemnation proceedings, or otherwise, such real and personal property and rights of way, either within or without the limits of the district, as in the judgment

of the sanitary board shall be necessary or proper, and to pay, for and hold the same; to make and accept any and all contracts, deeds, releases, and documents of every kind which, in the judgment of the sanitary board, shall be necessary or proper to the exercise of any of the powers of the district, and to direct the payment of all lawful claims and demands against it; to issue bonds as hereinafter provided, and to assess, levy, and collect taxes to pay the principal and interest of the same, and the cost of laying and the expense of maintaining any sewer or sewers that may be constructed subsequent to the issuance of said bonds, or any lawful claims against said district, and the running expenses of the district; to employ all necessary agents and assistants, and to pay the same; to lay its sewer and drains in any public street or road of the county; and for this purpose to enter upon the same and make all necessary and proper excavations, restoring the same to proper condition, but in case such street or road shall be in an incorporated city or town, the consent of the lawful authorities thereof shall first be obtained; to make and enforce all necessary and proper regulations for the removal of garbage and the cleanliness of the roads and streets of the district, and for the purpose of guarding against the spread of contagious and infectious diseases, and for the isolation of persons and houses affected with such diseases, and for the notification of the other inhabitants of the existence thereof, and all other sanitary regulations not in conflict with the constitution and laws of the state; to impose fines, penalties, and forfeitures for any and all violations of its regulations and orders, and to fix the penalty thereof by fine or imprisonment, or both; but no such fine shall exceed the sum of one hundred dollars, and no such imprisonment shall exceed one month; to call, hold, and conduct all elections necessary or proper after the formation of the district; to prescribe, by order, the time, mode, and manner of assessing, levying, and collecting taxes for sanitary purposes, except as is otherwise provided herein; to compel all residents and property owners within the district to connect their houses and habitations with the street sewers and drains and generally to do and perform any and all acts necessary or proper to the complete exercise and effect of any of its powers, or the purpose for which it was formed."

In 1895 the legislature passed an act to amend the sanitary law of 1891. (Stats. 1895, p. 85.) By section 1 of the amendatory act of 1895 it is sought to amend the title of the former act of 1891 by adding thereto the following: "And for empowering sanitary boards to provide in other respects for the good order and welfare of sanitary districts." Section 2 of the amendatory act of 1895 amends section 5 of the original act, set forth in full *supra*, by inserting therein the following: "To make and enforce all necessary and proper regulations for suppressing disorderly and disreputable resorts and houses of ill-fame within the district, and to determine the qualifications of persons authorized to sell liquors at retail, and from and after the passage of this act no license to keep a saloon or sell liquors at retail shall take effect or be operative within any sanitary district, unless the same be approved by the sanitary board of the district."

It is very clear that the act of 1891 conferred no power upon sanitary districts to pass an ordinance of the kind under consideration. It is claimed, however, on the part of the respondent that such power was conferred by virtue of the amendment of 1895. On the part of the petitioner it is contended, however, that said amendment of 1895 is unconstitutional and invalid. The constitution declares that "every act shall embrace but one subject, which subject shall be expressed in its title," and that "no law shall be revised or amended by reference to its title, but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended." (Const., art. IV, sec. 24.) In *Ex parte Liddell*, 93 Cal. 634, it is said: "Until a comparatively recent day the title of an act in this country was regarded as no part of it; but if the language of the act was ambiguous, the title might be considered in determining the intent of the legislature. At the present time, however, the constitutions of many states contain provisions similar to that quoted above. The object of the provision is to prevent legislative abuses—to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature as well as the public against fraud; to guard against the passage of bills, the titles of which give no intimation to members of the legisla-

ture or to the people of the matters contained therein." (See, also, Cooley's Constitutional Limitations, 6th ed., 169.)

In *People v. Parks,* 58 Cal. 625, the court had under consideration an act of the legislature entitled "An act to promote drainage." In the opinion it is said: "According to constitutional requirements for the enactment of statutory law, the title of every bill introduced into the legislature must contain the subject of legislation; and when the legislative will on that subject has assumed the form of law, its provisions must correspond with the subject of which the title is the name, standing for and representing it. The title of the act under consideration fairly indicates but one subject. As expressed in the title the whole object of the legislation is to promote drainage. Anyone, after reading the title, would naturally expect to find in the body of the act provisions for carrying that into effect as the whole object of the law, because such provisions, in view of the constitutional provisions referred to, would be necessary to give unity and wholeness to the law. Provisions of an act may be numerous; but however numerous, if they can be by fair intendment construed as falling within the subject matter of legislation, or necessary as ends and means to the attainment of the subject, the act will not conflict with the constitution. But if the act shall be found to be made of incongruous parts, or to comprehend unconnected and dissimilar subjects to that expressed in its title, it cannot be upheld." It was provided in that act for the appointment of a board of drainage commissioners, who were given power to "control debris from mining and other operations for the improvement and rectification of river channels, the erection of embankments or dikes necessary for the protection of lands, towns or cities from inundation," etc. The court held that all the subjects of the act would not naturally fall within the scope of the title. The storage of debris from mining and other operations, it was held, seemed to be a paramount object of the act, to promote drainage merely subordinate. "What the phrase 'other operations' may mean is not clear from the act itself. Under it may be concealed many subjects which are not expressed in the title; and the existence of such a phrase in the statute renders it obnoxious to the constitutional provisions under considera-

tion." And it was said the storage of debris, and the promotion of the drainage of a district of country, are things essentially different. The one has no necessary connection with the other.

The title to the act of 1895, amending the sanitary law of 1891, contained no intimation that the purpose of the act of 1895 was to amend the title of the former act. The title of the former act was attempted to be amended by an independent section in the act of 1895, as already shown. But even if it were permissible to amend the title of the former law in the manner attempted here, the amendment in this case does not enlarge the scope of the law at all, for "every act shall embrace but one subject, which subject shall be embraced in its title."

There is nothing in the title of the act under consideration, even as attempted to be amended, which in the remotest degree refers to the question of regulating the sale of liquors or prescribing the qualifications of persons dealing in the same. The matters enumerated in the title of the act show that it is for the formation of a sanitary district, and providing for sewers. All these matters properly fall under the meaning of the word "sanitary" or "sanitation," according to the standard authorities. A sanitary district, no more than an irrigation district, or a reclamation district, or a drainage district, possesses police powers properly belonging to cities and municipal bodies exercising local governmental functions. Such districts are created for the purpose generally of some special local improvement, and should exercise only such powers as may be conferred upon them by the legislature in the line of the object of their creation. Although in the nature of public corporations, they are not municipal corporations in the proper sense of that term. All municipal corporations are public corporations, but the converse does not follow that all public corporations are municipal. Railroad corporations are deemed *quasi* public corporations, but they are not deemed *quasi* municipal corporations. In some of the cases expressions may doubtless be found which would seem to indicate that public corporations and municipal corporations are synonymous, but it is, nevertheless, inaccurate to designate a drainage district or a sanitary district, although public corporations, as municipalities. Webster defines "municipal" as per-

taining to a city or corporation having the right of administer-
ing local government—as municipal rights, municipal officers;
and "municipality" is defined as a municipal district, a bor-
ough, a city, town or village. The Century Dictionary defines
"municipal" as pertaining to local self-government or corporate
government of a city or town; and "municipality," as a town
or city possessed of corporate privileges of local self-govern-
ment; a community under municipal jurisdiction. Bouvier's
Law Dictionary says "municipal" strictly applies only to what
belongs to a city. Among the Romans cities were called mun-
icipia. In a general sense, we say that all law other than in-
ternational is municipal law, but when we speak of corpora-
tions as municipal we mean cities or towns. These existed
before the constitution. They came down to us from former
times, and they have always formed an important part of our
system of government. The present constitution recognizes
the counties, cities, and towns theretofore formed and organ-
ized. "The several counties, as they now exist, are hereby
recognized as legal subdivisions of this state. . . . . The legis-
lature shall establish a system of county government which
shall be uniform throughout the state; . . . . and by general
laws shall provide for township organization, by which any
county may organize whenever a majority of the qualified
electors of such county voting at a general election shall so de-
termine; and whenever a county shall adopt township organi-
zation, the assessment and collection of the revenue shall be
made, and the business of such county, and the local affairs of
the several townships therein, shall be managed and transacted
in the manner prescribed by such general laws." The legisla-
ture is also required to "provide for the election or appoint-
ment in the several counties of boards of supervisors, sheriffs,
county clerks, district attorneys, and such other county, town-
ship, and municipal officers as public convenience may require,
and shall prescribe their duties and fix their terms of office."
The legislature is also required by general law to provide for
the incorporation, organization, and classification in proportion
to population of cities and towns, and city and county govern-
ments may be merged and consolidated into one municipal
government with one set of officers, and power is directly con-

ferred upon cities of a certain grade to frame charters for their own government, subject to the approval of the legislature, and it is further declared: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Const., art. XI, secs. 1, 4-8, 11.)

All that is said in respondent's argument as to the injurious effects upon the human system of the indulgence in alcoholic drink may be conceded, yet that does not touch the question under consideration. The question here is whether the legislature can graft upon an act designed for some local improvement, such as a drainage, irrigation, or sanitary district, a subject entirely foreign to the purposes of such act, and a subject also which clearly falls within the police powers possessed by cities and other like corporations formed and organized for governmental purposes. Under the rule of construction, *Expressio unius est exclusio alterius*, the legislature has no authority to create other public corporate bodies—whether called districts or by any other name—and clothe them with the power to make and enforce local, police, sanitary, and other regulations conferred by the constitution upon counties, cities, towns, or townships. In *Woodward v. Fruitvale Sanitary Dist.*, 99 Cal. 554, the act under consideration, passed in 1891, was upheld, but it was there said: "It may well be that if in the formation of a sanitary district an incorporated city or town shall be included, in which the authority conferred upon the sanitary board is delegated to the municipality, it will be held that the law under consideration was not intended to apply to such city or town." The same result follows if the authority attempted to be conferred infringes upon the rights and powers conferred upon counties by the constitution, as well as by general law. In this case the district in question is within the boundaries of Los Angeles county, which possesses ample power to regulate the liquor traffic, and it has exercised that power, as appears in this case. It is stipulated herein that at the time of the alleged commission of the offense by the petitioner he had both a wholesale and retail license from the board of supervisors of Los Angeles county authorizing him to carry on the business of wholesaling and retailing spirituous liquors at the

place where he was charged with violating the ordinance of said sanitary district.

The amendatory act of 1895 embraces a new, separate, and distinct subject from that in the original act of 1891—a subject also which is not embraced in the title of the act even as attempted to be amended, and which subject has been delegated by the constitution to other corporate bodies, to wit, counties, cities, towns, and townships. Said amendatory. act is, therefore, in conflict with the constitution and void; and the ordinance under which petitioner was convicted and is held is without authority of law and invalid.

Let the petitioner be discharged.

Temple, J., Harrison, J., and Beatty, C. J., concurred.

McFARLAND, J., concurring.—I concur in the judgment and in the foregoing opinion of Mr. Justice Van Dyke. I desire, however, to say explicitly that, in my opinion, the legislature cannot, under any circumstances, delegate to such a thing as a sanitary. district the power of enacting penal legislation. That power must be confined to the municipalities mentioned in the constitution which are given police powers, etc. The constitution does not contemplate that the state should be overrun and overloaded with innumerable legislative bodies, each having power to make laws under which citizens may be sent to jail.