[No. A030720. First Dist., Div. Five. Aug. 7, 1986.]

COASTAL CARE CENTERS, INC., Plaintiff and Appellant, v.
LARRY MEEKS, as Director, etc., Defendant and Respondent;
MAD RIVER COMMUNITY HOSPITAL,
Real Party in Interest and Respondent.

**[Opinion certified for partial publication.\*]**

*Parts I(A), III and IV are not published because they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

86

**COUNSEL**

John L. Wotring and Claudia M. Norby for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant

Attorney General, and John Davidson, Deputy Attorney General, for Defendant and Respondent.

J. Robert Liset and Musick, Peeler & Garrett for Real Party in Interest.

## OPINION

KING, J.—In this case we hold a competing health care provider does not have standing to force a state agency to comply with federal regulations concerning the proper procedures for approving the establishment of new skilled nursing care facilities. Furthermore, we hold the state health planning law does not explicitly or implicitly grant a competing health care provider the right to compel a state agency to convene a hearing before approving the establishment of a skilled nursing care facility which might affect the competing health care provider.

Coastal Care Centers, Inc. (Coastal) appeals from a judgment denying a peremptory writ of mandate. Coastal complains the Office of Statewide Health Planning and Development (OSHPD) failed to hold a hearing on Mad River Community Hospital's (Mad River) certificate of need (CON) application despite Coastal's request that it do so. Coastal argues federal and state law require OSHPD to hold a hearing on any CON application to build a skilled nursing facility when an "affected person" requests such hearing. We affirm the judgment.

The California health planning law (Health & Saf. Code, § 437 et seq.) requires a health facility or proposed health facility to obtain a CON from OSHPD before constructing new health facilities or expanding existing health facilities.[1] OSHPD decides to grant or deny a CON based on the statewide policies set forth in its own regulations and the statewide health facilities and services plan (Statewide Plan) adopted by the state advisory health council. (Health & Saf. Code, §§ 437.8, 437.9.)

The Statewide Plan integrates local area health plans developed by various health services agencies. (Health & Saf. Code, § 437.7, subd. (b).) It identifies existing health facility resources, health services areas, and local community needs for health care facilities, and is periodically updated to

---

[1]Undertaking these regulated projects without obtaining prior CON approval is grounds for denial or revocation of health facility licensure, assessment of civil penalties, and denial of Medi-Cal reimbursement. (Health & Saf. Code, § 436.8; Welf. & Inst. Code, § 14105.6.)

reflect current population estimates, health facility inventory and utilization, and other statistical data. (Health & Saf. Code, §§ 437.7, subd. (b), 437.9, subd. (b); Cal. Admin. Code, tit. 22, § 90801.) The Statewide Plan also divides California into various health facility planning areas (HFPA) based on geographical location. In 1984, HFPA 105 included the towns of Arcata and Eureka, and the Statewide Plan indicated a need for 343 skilled nursing facility beds in HFPA 105. Coastal already operated 4 skilled nursing facilities in Eureka consisting of 351 beds.

In March 1984, Mad River applied to OSHPD for a CON to build and operate a skilled nursing care facility, consisting of 54 beds, adjacent to its acute care facility in Arcata. This application was tentatively denied in June 1984 because OSHPD found there was no need for additional skilled nursing facility beds in the Arcata area, although OSHPD ordered a hearing on the matter.

In May 1984, Coastal filed an application for a CON to relocate one of their existing 66-bed Eureka skilled nursing facilities to McKinleyville, which was also located in HFPA 105. While Coastal's application was pending, the Northern California Health Systems Agency held a public meeting, pursuant to Health and Safety Code section 437.7,[2] on Mad River's application. Representatives of Mad River, Coastal, and the general public participated in the meeting. Shortly after this meeting, Coastal filed a motion to intervene in Mad River's CON application due to Coastal's "interest relating to the transaction, which is a subject of the action, and it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest which is not being adequately represented by the existing parties."

In September 1984, the state advisory health council revised the Statewide Plan by dividing HFPA 105 into HFPA 105A (Arcata) and HFPA 105E (Eureka). The plan showed HFPA 105A had a need for 67 beds and HFPA 105E had a need for 267 beds.

Four days after this revision, OSHPD issued a CON to both Mad River and Coastal without holding any hearings. In October 1984, OSHPD issued a revocation of order for hearing on Mad River's application for a CON.

---

[2]Health and Safety Code section 437.7 states in pertinent part: "The functions of area health planning agencies are . . . (c) To conduct public meetings in which providers of health care and consumers will be encouraged to participate."

Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

Coastal then filed a petition for writ of mandate based on OSHPD's failure to hold a hearing on Mad River's application. The court denied Coastal's request.

## I. FEDERAL LAW

The National Health Planning and Development Act (NHPRDA), 42 United States Code, section 300k et seq., establishes a national health planning program "to facilitate the development of recommendations for a national health planning policy, to augment areawide and State planning for health services, manpower, and facilities, and to authorize financial assistance for the development of resources to further that policy." (42 U.S.C. § 300k(b).) States must enact CON programs which comply with NHPRDA regulations in order to be eligible to receive funding under the program. (42 U.S.C. §§ 300m, 300m-4.)

Each participating state enters into a designation agreement with the Secretary of the United States Department of Health and Human Services (HHS) in order to qualify for the program. (42 U.S.C. § 300m(b).) The Secretary of HHS may reduce or terminate federal funding under the program when states fail to comply with NHPRDA regulations. (42 U.S.C. § 300m (b)(4)(B), (d).) It is undisputed that California has entered into a conditional designation agreement with the secretary of HHS under the NHPRDA program.

### A.*

. . . . . . . . . . . . . . . . . . . . . .

### B.

Mad River and OSHPD challenge Coastal's standing to enforce any federal requirements under NHPRDA because that statute does not contain an express or implied private right of action. Coastal's response is twofold. First, it argues that under *Greater St. Louis Health Systems Agcy.* v. *Teasdale* (E.D. Mo. 1980) 506 F.Supp. 23, the state is obligated to meet federal requirements in order to receive federal funds. Second, it argues the California Legislature intended to comply with all federal requirements.

In *Community Psychiatric Centers of Oregon* v. *Grant* (9th Cir. 1981) 664 F.2d 1148, the Ninth Circuit Court of Appeals held the NHPRDA does

---

*See footnote, *ante*, page 85.

not create an express or implied private right of action in favor of competing health care providers. In *Grant,* an operator of a psychiatric hospital brought an action against a general hospital and the administrator of the Oregon State Health Planning and Development Agency to prohibit the general hospital from developing a psychiatric unit until it obtained a CON from the state and to compel the administrator to conduct a CON proceeding. The Ninth Circuit found "Congress was not concerned with the harm that a competitor might suffer by the entry of a new provider into the market where there was no actual need for its services." (*Id.,* at p. 1151.)

Coastal's first reply to the standing issue is a nonsequitur. Even if the state *is* obligated to abide by federal requirements, Coastal may not be the party that can enforce such obligation. *Teasdale* held that NHPRDA was not a "mandatory regulation; it merely established an optional program which a state must implement if that state wishes to take advantage of the federal funds allocated by the Act." (*Greater St. Louis Health Systems Agcy.* v. *Teasdale, supra,* 506 F.Supp. 23, 27.) The *Teasdale* court left open the question of whether a competing health care facility may enforce state compliance with NHPRDA.

Coastal's second reply, that the Legislature intended to follow federal procedural guidelines when it enacted the health planning law, raises a question of *state* statutory interpretation. If Coastal's assertion regarding state legislative intent is correct, then any ambiguity in the state statutory language must be read to comply with federal requirements. But if the Legislature did not intend to implement federal standards, then under *Grant* Coastal has no standing to compel OSHPD to do so.

Coastal's reference to *In re Application for Certificate of Need* (Wyo. 1984) 689 P.2d 108, is not relevant to the standing issue because *In re Application for Certificate of Need* did not address that issue nor did it discuss the holding of *Grant.*

## II. STATE LAW

Coastal contends the state health planning law allows it, as a competing health care facility, to compel OSHPD to hold a hearing on Mad River's application for a CON.[5] Coastal relies on the statutory language and the legislative history of the state health planning law, to support its contention.

[5]At various points in its brief, Coastal confuses this issue with the issue of whether it is a "beneficially interested party" under the test set forth in *Memorial Hosp. of So. Cal.* v. *State Health Planning Council* (1972) 28 Cal.App.3d 167 [104 Cal.Rptr. 492]. The beneficial interest test of *Memorial Hospital* applies only to the standing of a party to request a writ, not to the substantive issue of whether the lower court should have issued a writ on the merits. (*Id.,* at pp. 177-179.) In the present case, the court did not rule that Coastal had no standing to request a writ; rather it denied the writ on the merits of Coastal's request after finding that OSHPD did not act in excess of its jurisdiction when it granted a CON to Mad River.

## A. Express Language

Coastal first refers to section 437.15 as creating an express right for a competing health care facility to demand OSHPD hold a hearing before granting any CON. Section 437.15, subdivision (c)(2) provides: "Upon a determination that an application is complete . . . [OSHPD] shall promptly publish notice in a newspaper of general circulation in the geographical area to be served by the project. Such notice shall describe the project and provide that *any affected person may request, in writing, that the office hold a public hearing in the course of its review*. . . . Such written request shall be based upon the applicable review criteria and shall specify the criteria upon which it is based." (Italics added.)

Assuming arguendo that competing health care facilities are "affected persons" within the meaning of the statute, the explicit language of section 437.15, subdivision (c)(2), only allows Coastal to *request* a hearing and to state its reasons for making such request. It does not deny OSHPD discretion to refuse an affected person's request.

Coastal next argues its explicit right to present evidence, present and cross-examine witnesses, and present oral and written arguments under Government Code sections 11500, subdivision (f), and 11513, and the California Administrative Code, title 22, section 90906, subdivision (b), would be rendered meaningless if Coastal were not able to compel OSHPD to hold a hearing. Government Code section 11500, subdivision (f), defines an "adjudicatory hearing," and Government Code section 11513 sets out the procedures under which any administrative hearing shall be conducted. Administrative Code, title 22, section 90906, subdivision (b), requires OSHPD to seek the cooperation of competing applicants when it receives more than one request for a CON in the same geographic area.

Each of these statutes are relevant to the conduct of a hearing *once granted*. They are not "rendered meaningless" by OSHPD's discretion to refuse a hearing because they provide procedural protection for hearing participants.

In sum, no explicit statutory language in the California health planning law denies OSHPD discretion to refuse to convene a hearing based solely on an affected person's request to hold one.

## B. Legislative Intent

Coastal alternatively argues its right to compel a hearing is implied in the language of the health planning law. In support of its argument, Coastal

relies on the Legislature's alleged dual intent to implement the requirements of NHPRDA and to provide competing health care facilities a hearing right independent of any federal regulations.

Coastal reasons the Legislature intended to avoid the risk of losing any federal funding, thus it must have intended to implement NHPRDA requirements.[6] The legislative history of the state's health planning law indicates otherwise.

California's health planning law had undergone two major revisions over the past five years, in 1981-1982 (Sen. Bill No. 930) and in 1983-1984 (Sen. Bill No. 517). The legislative history of these changes reflect two related trends: (1) in the face of federal budgetary cutbacks, the state health planning program was simplified and provided for an expedited CON review process; and (2) the state's CON program did not fully comply with federal requirements.

The Assembly Committee on Health analysis of Senate Bill No. 930 states, "The amendments to current law proposed by this bill streamline the Certificate of Need process in this state in the face of reduced federal funding . . . At this time, the state is not in compliance with existing federal law and although this bill amends existing law it still does not bring the state into compliance." (Assem. Com. on Health, Analysis of Sen. Bill No. 930 (1981-1982 Reg. Sess.) as amended Aug. 27, 1981, p. 9.)

The 1983-1984 amendments to the health planning law further demonstrate the Legislature's disinclination to conform CON procedures to federal requirements. An uncodified portion of the 1983-1984 amendments states, "The amendments to Sections . . . 437.15 [and] . . . 438.5 . . . which are made by the act which enacts this section shall become operative *unless the federal Department of Health and Human Services makes a formal finding* that the state is out of conformity with federal health planning law and the Director of the Office of Statewide Health Planning and Development determines, by regulation, that the amendments would result in *substantial reductions* in allotments, grants, loans, or loan guarantees made by the federal government to entities within the state." (1983 Stats., ch. 1105, § 17, pp. 4182-4183, italics added.)

The predecessor version of this uncodified section read, "The amendments to Sections . . . 437.15 [and] . . . 438.5 . . . which are made by the act

---

[6]Because we conclude the Legislature did not intend to adopt federal health planning guidelines, it is unnecessary to reach the issue of what those guidelines require.

which enacts this section *shall only become operative to the extent that the Director* of the Office of Statewide Health Planning and Development *determines,* by regulation, that the *amendments would not prevent the state from receiving any federal funds."* (Sen. Bill No. 517 (1983-1984 Reg. Sess.) as amended June 29, 1983, italics added.) The change in this uncodified language indicates the following: (1) the Legislature recognized the revisions it made might not conform to federal standards; (2) it elected to risk losing some federal funding under NHPRDA; and (3) it sought to shift the burden of enforcement to the federal bureaucracy rather than to rely on a self-policing system within OSHPD.

■ Contrary to Coastal's suggestion, a federal act does not automatically give meaning to state legislation unless it is part of a mandatory regulatory scheme. *Greater St. Louis Health Systems Agcy.* v. *Teasdale, supra,* 506 F.Supp. at page 27, held NHPRDA is an optional federal funding program. Because of the optional nature of NHPRDA, the Legislature can enact legislation which does not fully comply with federal health planning regulations.

Changes made to the California health planning law also indicate that the Legislature, independent of any federal requirements, did not intend competitors of skilled nursing facilities to have the right to compel hearings.

Before 1981, section 438.5 required OSHPD to hold a hearing on every health care facility application. It stated, "Within 90 calendar days of the receipt of the complete application, . . . the Office of Statewide Health Planning and Development *shall* hold a hearing on the application in the geographical area served by the area health planning agency reviewing the project." (Italics added.)

The 1981 amendment (Sen. Bill No. 930) made two significant changes in the OSHPD hearing requirements. First, section 438.5 was changed to make the CON hearing discretionary, "Within 90 calendar days of the receipt of the complete application, . . . the Office of Statewide Health Planning and Development shall do one of the following: (1) Approve the application. . . . (2) Order a hearing if the office determines that substantial questions exist as to the eligibility of the proposed project for certificate-of-need approval or if requested to do so by the area health planning agency."

Second, section 437.15 was created to establish procedural exceptions for "projects not related to patient care" in order to expedite the review process for those projects. (See 1981 Stats., ch. 873, § 7, pp. 3349-3350.)

Section 437.15, subdivision (c)(3), states, *"No hearing need be held by the office in the course of its review unless requested by an affected person* within 30 days of the publication of notice . . ., or unless requested by the appropriate area agency within 45 calendar days, or unless ordered by the office within 60 calendar days after the application is determined to be complete." (Italics added.)

In 1983, the Legislature again amended the health planning law to further simplify and expedite the review process for health care facilities. The Assembly Health Committee analysis on Senate Bill No. 517 states, "This bill is designed to 'streamline', but not eliminate the [CON review] process." (Assem. Com. on Health, Analysis of Sen. Bill No. 517 (1983-1984 Reg. Sess.) as amended June 29, 1983, p. 4.)

Section 438.5, subdivision (a)(2), was modified to remove the area health planning agency's right to compel a hearing. Section 437.15 added skilled nursing facilities to the list of projects the Legislature intended to receive expedited procedural treatment.[7] (Sen. Bill No. 517, as amended in Assem. July 16, 1983.)

Finally, and most importantly, the Legislature amended section 437.15, subdivision (c)(3), to remove the provision which most strongly suggested an affected person could require OSHPD to convene a hearing. The Legislative Counsel's Digest states, "No hearing need be held by the office in the course of its review unless requested by an affected person within 15 days of the publication of the notice . . ." (Sen. Bill No. 517, as amended in Assem. July 16, 1983.) This specific removal, in the face of the Legislature's intent to expedite the review process for skilled nursing facilities, rebuts any implication from the language in section 437.15, subdivision (c)(2), which allows an affected person to "request" a hearing, that the Legislature intended to allow a competing health care facility to force OSHPD to hold a hearing.

Coastal's final argument with respect to the Legislature's intent when it enacted the health planning law is that once OSHPD ordered a hearing, it could not rescind that order. Coastal relies on section 437.15, subdivision (c)(3), which states, "No hearing need be held by the office in the course

---

[7]Section 437.15, subdivision (a), was amended to read, "It is the intent of the Legislature that . . . projects for the establishment or expansion of skilled nursing facilities . . . be processed as expeditiously as possible."

of its review unless ordered by the office within 30 calendar days after the application is determined to be complete."

■ The well-settled principles of statutory construction require a court to ascertain the intent of the Legislature in order to effectuate the purpose of the law and to construe every statute with reference to the whole system of law of which it is a part so that all parts may be harmonized and have effect. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].) To determine the Legislature's intent, courts look first to the words of the statute. (*Id.*, at p. 485.) However, the statutory language should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. (*Ibid.*)

In the present case, the statutory language is unclear. On the one hand, the passage could mean, as Coastal suggests, once OSHPD orders a hearing it can never rescind the order. On the other hand, it could mean OSHPD has authority to compel a hearing, but must do so within 30 days of the application's completion.

There is no legislative history on this section, nor any cases which interpret it. But in light of the statutory changes in California's health planning law since 1981, Coastal's interpretation makes little sense. First, such interpretation runs counter to the Legislature's explicit goal of expediting the review process for skilled nursing facilities. Second, since competing health care facilities have no right to compel a hearing at the outset of OSHPD's CON review process, it seems absurd that those competitors should be in a better position merely due to OSHPD's initial exercise of discretion in ordering a hearing.

■ In sum, the legislative history of the California health planning law indicates the Legislature did not intend to provide competing health care facilities a right to demand a public hearing on a CON application either before or after OSHPD has exercised its discretion to order a hearing.

III., IV.*

* * * * * * * * * * * * * * * * * * * * *

*See footnote, *ante,* page 85.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.