TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-208 |
| of | : | |
| | : | OCTOBER 31, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

The HONORABLE CHARLES W. QUACKENBUSH, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a regional air pollution control district impose parking fees for the purpose of reducing air pollution?

CONCLUSION

A regional air pollution control district may not impose parking fees for the purpose of reducing air pollution.

ANALYSIS

What may generally be described as "air pollution control districts" are provided for in sections 40000-41082 of the Health and Safety Code.[1] "County districts" (§ 40100 et seq.), "unified districts" (§ 40150 et seq.), the Bay Area Air Quality Management District (§ 40200 et seq.), "regional districts" (§ 40300 et seq.), the South Coast Air Quality Management District (§ 40400 et seq.), and the Sacramento Metropolitan Air Quality Management District (§ 40950 et seq.) are separately provided for under the legislative scheme. Although certain statutes apply only to certain types of districts, the Legislature has granted general powers and duties which are applicable to all districts (§ 40700 et seq.).

Our focus herein is on "regional districts" which may be formed by the boards of supervisors of two or more counties within an air basin. (§§ 40300-40304.) The districts are governed primarily by section 40701 et seq., the "general powers and duties" of air pollution control districts. With respect to these provisions, we are concerned here with certain requirements of the

_____

[1]All section references are to the Health and Safety Code unless otherwise indicated.

California Clean Air Act of 1988 (Stats. 1988, ch. 1568; hereafter "Act") which added, inter alia, sections 40716 and 40717.

Section 40716 provides:

"(a) In carrying out its responsibilities pursuant to this division with respect to the attainment of state ambient air quality standards, a district may adopt and implement regulations to accomplish both of the following:

"(1) Reduce or mitigate emissions from indirect and area wide sources of air pollution.

"(2) Encourage or require the use of ridesharing, vanpooling, flexible work hours, or other measures which reduce the number or length of vehicle trips.

"(b) Nothing in this section constitutes an infringement on the existing authority of counties and cities to plan or control land use, and nothing in this section provides or transfers new authority over such land use to a district."

Section 40717 provides in part:

"(a) A district shall adopt, implement, and enforce transportation control measures for the attainment of state or federal ambient air quality standards to the extent necessary to comply with Section 40918, 40919, or 40920.

". . . . . . . . . . . .

"(g) For purposes of this section, `transportation control measures' means any strategy to reduce vehicle trips, vehicle use, vehicle miles traveled, vehicle idling, or traffic congestion for the purpose of reducing motor vehicle emissions."

Sections 40918, 40919 and 40920, in turn, set forth requirements which each district that has been designated as a "nonattainment area for state ambient air quality standards" must provide in an "attainment plan." (See §§ 40910-40916.) Section 40918 requires certain measures including "[r]easonably available transportation control measures" and "[p]rovisions to develop . . . indirect source control programs." Section 40919 requires the same measures to be adopted by districts with "serious air pollution" plus others, including "[t]ransportation control measures to substantially reduce the rate in passenger vehicle trips and miles travelled per trip." Section 49020 requires additional measures for each district with "severe air pollution" including "[t]ransportation control measures to achieve an average during weekday commute hours of 1.5 or more persons per passenger vehicle by 1999."

It is in this statutory framework that we are presented with the question of whether a regional air pollution control district may impose parking fees to reduce air pollution. We conclude that it may not.

An air pollution control district, as a special district, "has only such powers as are given to it by statute and it is an entity, the powers and functions of which are derived entirely from the Legislature." (Cf., *People ex rel. City of Downey v. Downey County Water Dist.* (1962) 202 Cal.App.2d 786, 795; see *Crawford* v. *Imperial Irrigation Dist.* (1927) 200 Cal. 318, 325-334; *In re Werner* (1900) 129 Cal. 567, 572-574; *Trimont Land Co.* v. *Truckee Sanitary Dist.* (1983) 145

Cal.App.3d 330, 343-344; 73 Ops.Cal.Atty.Gen. 229, 234-235 (1990); 27 Ops.Cal.Atty.Gen. 102, 103-104 (1956); 6 Ops.Cal.Atty.Gen. 12, 13-15 (1945).)

Sections 40716 and 40717 are the only provisions of state law that have been suggested as possible sources of authority for imposing the parking fees in question. The two statutes contain general language and broadly worded grants of power, but clearly they do not expressly grant authority to impose fees or charges of any kind. If they do grant such authority, it must be by implication. May the imposition of parking fees be implied under the wording of either of these statutes?

It may be argued that sections 40716 and 40717 should be read in light of the federal Clean Air Act (42 U.S.C. §§ 7401-7642), and since the latter recognizes "parking surcharge regulations"[2] as an appropriate method of reducing air pollution (see generally, 44 Fed.Reg. 20375 (April 4, 1979); 38 Fed.Reg. 30629 (Nov. 6, 1973); *South Terminal Corp.* v. *Environmental Protection Agcy.* (1st Cir. 1974) 504 F.2d 646 [parking supply controls upheld]; *Friends of the Earth* v. *U.S. Environmental Pro. Agcy.* (D.C. Cir. 1974) 499 F.2d 1188 ["gradual reduction in the number of offstreet parking spaces and a change in pricing policies to discourage passenger car . . . commuting" upheld]), sections 40716 and 40717 should be so construed as well. We do not agree.

It is well settled that federal law may be looked upon for guidance in interpreting state statutes if the state legislation is patterned after the federal law in language and purpose. (See *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391; *Coastal Care Centers, Inc.* v. *Meeks* (1986) 184 Cal.App.3d 85, 93; *Public Utilities Com.* v. *Energy Resources Conservation & Dev. Com.* (1984) 150 Cal.App.3d 437, 445; *Independent Union of Pub. Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482, 488.) Here, however, no language in section 40716 or 40717 or any other state statute may be said to parallel the explicit federal language of adopting a "parking surcharge regulation." While the general purposes of the state and federal statutory schemes are clearly similar, particular remedies to obtain those purposes need not be the same. Moreover, in stating its intent for enacting the Act, the Legislature declared that "it is necessary for the State of California to develop and implement its own program to attain air quality standards" independent of the federal law. (Stats. 1988, ch. 1568, § 1, subd. (b)(5).) We find no persuasive reason for adopting the federal law provisions with respect to the imposition of parking fees when the Legislature has not indicated any reliance upon such particular remedial measure.

Indeed, when we look to the provisions of the Act as a whole, we find a lack of intent to grant districts the authority to impose the parking fees in question. "It is well settled that statutes should be construed in harmony with other statutes on the same general subject." (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665.) "[E]very statute should be construed with reference to the whole system of law of which it is a part" (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541); "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole" (*People.* v. *Craft* (19868) 410 Cal.3d 554, 560).

---

[2]The federal definition of a parking surcharge regulation is as follows:

"The term `parking surcharge regulation' means a regulation imposing or requiring the imposition of any tax, surcharge, fee, or other charge on parking spaces, or any other area used for the temporary storage of motor vehicles." (42 U.S.C. § 7410(c)(2)(D)(i).)

The Legislature has provided for the imposition of a fee for vehicles registered within a district. A district currently may assess a fee of up to $2 per vehicle, and after April 1, 1992, may increase such fee to $4 per vehicle. (§§ 44220-44237.) Districts also have express statutory authority to impose other fees, such as to cover the costs of programs relating to stationary sources of air pollution (§ 42311) and for reviewing, monitoring, and enforcing attainment plans (§ 41512.5). (See also §§ 40500, 40506, 40510, 40510.7, 40511, 40512, 40522, 41081, 41512, 42311.2, 42311.5.) The Legislature has been specific in detailing the amount of these various fees and the uses for which they may be expended. Sections 40716 and 40717 are decidedly different in their general grants of authority.

As the Supreme Court recently noted in *Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 596, it is a "rule that where a statute contains a given provision with reference to one subject, the omission of such provision from a similar statute containing a related subject is significant to show that a different intention existed." (See also *People* v. *Stevens* (1986) 189 Cal.App.3d 1020, 1024; *Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691.) We believe that when the Legislature intended to grant districts the authority to impose fees and charges, it did so in unmistakable language. Had it wanted to authorize the imposition of parking fees, it would have done so more directly than the language of sections 40716 and 40717. (See *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 237-238; *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 927.)

In this regard, we note several administrative problems that would result if the imposition of parking fees were included in the general grants of authority contained in sections 40716 and 40717. Would the fees be imposed upon the persons owning the parking spaces or upon the persons using the parking spaces? If the former, would the fees be required to be "passed on" to the latter? If so, would the former be required to turn over the fees to the district? It is unreasonable to conclude that the Legislature would leave these questions unresolved under the terms of sections 40716 and 40717,[3] when it has been so specific in authorizing districts to impose particular fees and charges in other statutes of the Act.

While the issue is not totally free from doubt, on balance sections 40716 and 40717 may not reasonably be construed as allowing districts to impose parking fees to attain state and federal air quality standards. Other means are available under the Act to meet the legislative goals. Accordingly, we conclude in answer to the question presented that a regional air pollution control district may not impose parking fees for the purpose of reducing air pollution.

\* \* \* \*

---

[3]Because of the conclusion reached herein, we need not address these questions or a second question asked by the requester concerning whether the parking fees could be imposed without a two-thirds approval vote of the electorate pursuant to section 4, article XIII A of the Constitution (see *Pennell* v. *City of San Jose* (1986) 42 Cal.3d 365, 375 affd. (1988) 485 U.S. 1; *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, 202-208; *San Diego Gas & Electric Co.* v. *San Diego County Air Pollution Control Dist.* (1988) 203 Cal.App.3d 1132, 1145).